**Philip MIRANDA, Employee, Plaintiff-Appellant,**

**v.**

**AMERICAN REFRIGERATOR TRANSIT CO., Employer, and the Travelers Insurance Co., Insurer, Defendants-Respondents.**

**No. 31615.**

St. Louis Court of Appeals.

Missouri.

June 15, 1965.

**414**

Arthur E. McLeod, St. Louis, for plaintiff-appellant.

Evans & Dixon, Edward W. Warner, St. Louis, for defendant-respondent.

ANDERSON, Judge.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis, affirming an award of the Industrial Commission of Missouri denying compensation to claimant, Philip Miranda, on his claim for workmen's compensation benefits against his employer, American Refrigerator Transit Company and its insurance carrier, Travelers Insurance Company.

The claim filed by appellant with the commission alleged the date of the accident as August 24, 1961; that the part of the body injured was the "middle of lower back and pain in the hips, and swelling of feet and legs;" and that the accident happened when "claimant was picking up angle iron from a hoister when his foot slipped and he felt severe pain in the lower back."

The Employer and Insurer filed an answer which admitted that claimant was an employee of American Refrigerator Transit on or about August 24, 1961; that all liability of said employer was insured by Travelers Insurance Company; and that the employer and employee were operating under and subject to the terms and conditions of the Missouri Workmen's Compensation Law. These allegations were followed by a general denial of each and every allegation contained in the claim not admitted in said answer.

The matter came on for hearing before a referee of the commission and on February 9, 1962, resulted in a temporary or partial award in favor of claimant, which provided for the payment of $679.50 for medical aid furnished the employee and not furnished by the employer or insurer, and compensation in the sum of $45.00 per week for temporary total disability for a period of 22⅗ weeks beginning August 25, 1961. The case was by the terms of the award reset for further hearing on June 25, 1962. It also provided that in the meantime medical treatment should be provided as required and compensation paid at the rate of $45 per week for all temporary total disability suffered by claimant in the meantime as a result of said back injury. The referee's finding with respect to accident and injury therefrom was "that on

August 24, 1961, Philip Miranda, while in the employ of American Refrigerator Transit Company, was bending over to pick up some material and one of his feet slipped causing injury to his back."

On February 14, 1962, the Employer and Insurer filed an application with the Industrial Commission for review of the findings and award of the Referee by the full commission. The Commission thereafter reversed the award of the Referee, stating in its Final Award Denying Compensation, that, "(t)he Commission finds from all the evidence that employee did not suffer the accident described in his direct testimony herein. In so holding, we find persuasive the discrepancies between the testimony of employee himself and the testimony of Croner, his purported eye witness, as well as discrepancies between the testimony of both employee and Croner, and that of Hanasek, also present. Among the various discrepancies noted were the varying descriptions of the locations of these three persons at the time of the purported accident. We are particularly convinced that if employee was, in fact, at the side of the machine (as he repeatedly testified), then Croner could not have seen the alleged slipping of employee's foot upon the railroad rail (or pipe). We find further persuasive employee's failure to report the incident *as testified to upon the stand* to his superiors and to his doctors at any time prior to the hearing of this cause.

"But even if employee had, in fact, suffered an accident as contended, we are far from convinced that the present disability from which employee suffers is a result thereof. Employee was very evasive and contradictory in testifying to his *prior* back condition. At one place he says he had suffered low back pain only once before, and then for a brief period of time. While it is true that he does, upon cross-examination, recede somewhat from this position, even there he attempts to minimize these prior episodes. However, the testimony of Dr. Lembeck as to the contents of the records of the Missouri Pacific Employee's Hospital, uncontradicted, convinces us that employee had suffered *almost continuous* low back pain since the year 1953. He had been to the hospital many times as an out patient for treatment, therapy, and examination for *low back pain*, some of the courses of treatment running for many months. We find and believe that employee has failed to sustain his burden of proof as to what part of his present disability, if any, results from the purported accident involved in this claim."

From the final award of the commission denying compensation, claimant in due course appealed to the Circuit Court. The latter as heretofore stated affirmed, and from the judgment of affirmance the appeal to this Court was taken.

Appellant contends that the Circuit Court erred in sustaining the award of the Industrial Commission in that (1) The award could not have reasonably been made upon the whole record, (2) The award was contrary to the overwhelming weight of the evidence, (3) The award was not supported by sufficient and competent evidence, (4) The commission in making its award did not give due consideration to the referee's finding and award.

Philip Miranda, claimant, was forty years of age. He had been employed at the time of the alleged accident and injury by the American Refrigerator Transit Company for almost fourteen years. He testified that he was a carman helper. He was, on August 24, 1961, the date of his alleged injury, operating a material hauling truck called a hoister, or fork lift. This vehicle was designed to be operated between the rails of railroad tracks. In the front of the vehicle is a platform, referred to sometimes in the testimony as a "pallet," on which material being transported was carried. The hoister had four wheels, two in front and two in the rear. The front wheels were located immediately behind the platform. The platform and the body of the hoister were only a few

inches from the ground. The driver's seat was located inside the hoister and on the left side thereof.

Just prior to the alleged accident, claimant had driven the hoister along a railroad track in the employer's car-shop yards to an area where Croner and Hanasek were working on the repair of a railroad refrigerator car. The hoister was loaded with material for use in said repairs. Claimant referred to this material as "reservoir angle irons."

These angle irons were 4 × 4 and slightly over 36 inches long. The hoister, according to Miranda's testimony was stopped opposite to where Croner and Hanasek were. He also stated that he stepped off the hoister on the left side; that Croner and Hanasek were on the right side of the hoister when he stepped down; that he went forward to unload the material; that it takes more than two men to lift a reservoir angle iron; that he bent over to take hold of the material and his left foot slipped on a piece of pipe which was beside the track; that Mr. Hanasek was on the opposite side of the hoister and also bent down to pick up the other end of the angle iron; that Croner was to the left of Hanasek, the two men being side by side; that he (claimant) was at about the middle of the pallet when he bent over; that when he slipped he experienced great pain in the lower portion of his back which felt like something had snapped; that he grabbed onto the hoister; that the pain was so intense, he broke out in a sweat and cried; that when the pain struck his hands had not reached the angle iron; that his foot slipped about a foot; that he stayed in a bent over position for about thirty minutes; that he refused assistance offered by his co-employees, and when he was able to straighten up, he picked up pieces of a pipe and put them into his pocket; that he then continued working that afternoon; but thereafter, reported to the office that his back was hurt and was sent to the Missouri Pacific Employee's Association Hospital. Claimant in one part of his testimony stated that he told Hanasek, Mr. Croner and his foreman that he was hurt, but did not tell them how he was injured; that he never told anyone out there, including his foreman, that he had slipped on a pipe. Later on in his examination, he stated he told Croner he thought he had slipped on some pipes, and showed him the pipes. Claimant remained a patient at the hospital or of its medical staff from the time he entered the hospital until the hearing before the Referee, January 25, 1962. His treatment during this time was for discomfort in his back. He has not been employed since August 24, 1961. Claimant testified that the doctors at the hospital told him not to go back to work.

Claimant further testified that he told the clerk who took his statement that he slipped, but did not tell him he slipped on the pipe. Respondent's witness, Richard Sale, the clerk, who took the statement testified that Miranda came into the office and said he stooped over and froze in that position; that he made a record of it; that the record made was, "August 24, P. Miranda, Carman helper, thirty-nine, bending over to pick up a piece of reservoir angle and didn't pick it up, back ached and had to hold on to the wrought-iron hoister." Nothing was said in this statement about slipping. Sale testified that claimant told him just what was said in the report. On September 22, 1961, claimant signed a personal injury report in Richard Sale's office. The description of the injury appearing in that report is as follows: "While working for W. E. Awalt, Asst. Gen. Foreman, on the steel track, I was hauling material. I was unloading material for the reservoir tank, when I bent over to pick up a piece of steel angle and couldn't get up, finally I grabbed hold of hoister after 30 minutes, suffering pain in my back." Nothing was said in this report about claimant's foot slipping. Sale further testified that Miranda read the report and signed it; that he made no objections to any part of it; and that the matter appearing in the report is what claimant told him.

William Croner was a witness for claimant. He testified that he noticed claimant driving south between the rails; that he turned off his torch, laid it down, and went over to assist with the material; that as he approached the hoister, Miranda had stopped, gotten off it and was walking around in front of the hoister and was facing west; that as he came around the front of the hoister and pallet he was coming toward the witness; that he was bending over and stooping at the same time; that witness noticed his left foot touch the top of the rail, and move sideways about two inches; that he was bending over to reach the material; that witness heard him say, "Oh, my back," then get over to the hoister and held on to it; that he held on to the hoister 15 or 20 minutes or longer; that he broke out in a sweat and turned white; that he (witness) asked claimant if he could help him, but he answered that he thought he would be all right if he rested a while; the witness further testified he was about three or four feet from claimant when he saw claimant's foot slip as he was bending over.

On cross-examination, the witness stated he was directly in front of the hoister between the rails of the set of tracks upon which the hoister was located and that claimant was directly in front of him between him and the material on the hoister.

Croner further testified that he discussed the matter with his foreman and two or three days later filled out a report in the office, and said the same things to the chief clerk. He also stated that he did not tell the chief clerk that there was a slip, but said that claimant's foot slid sideways which statement was in his report. This report was not offered in evidence. He further testified that his foreman, Mr. Awalt, knew about the occurrence, and discussed it with witness, but Mr. Awalt never inquired of the particulars, and did not ask for a report of the incident. The witness further testified he talked to many people, perhaps one hundred, about the incident and told the story how it happened;

that he discussed it with Hanasek, and believed he told Hanasek he saw claimant's foot slip, the day it happened.

Claimant definitely testified that the piece of pipe he slipped on was not in front of the hoister, but on the side of it, in front of the front wheel of the hoister.

Dr. Joseph A. Lembeck was called as a witness by respondents. He stated that claimant was admitted to the hospital on September 2, 1961, and discharged on September 2, 1961; that he was readmitted on November 13, 1961, and discharged on November 27, 1961; that he saw claimant on August 25, 1961, at which time claimant had an acute low back strain, arthritis of the lumbar spine with hypertrophic changes in the bodies of the lumbar vertebrae of long standing; and that the diagnosis on the second admission was arthritis of the lumbar spine and lumbosacral strain. According to Dr. Lembeck, the records of the hospital showed that claimant had previous back disability and pain on numerous occasions for which he had been treated beginning as far back as July, 1953. Treatment consisted of heat applications (diathermy), physiotherapy, medication and on July 25, 1960, a lumbosacral support (back brace) was prescribed. Dr. Lembeck further testified that based upon the records of the hospital and his treatment, the diagnosis at the present time was similar to the condition the patient had since 1953; that the patient could have low back discomfort merely by bending forward at the waist. In answer to a hypothetical question, the doctor testified, "The mere movement of the back, in this case the lumbar region, in lifting for something ordinarily, would not cause exacerbation of chronic arthritis, but the mere fact of lifting would cause, or may cause an exacerbation of pre-existing arthritis in the lumbar vertebrae." The record shows that on August 24, 1961, prior to the incident in question, claimant lifted various objects including air tanks which weighed about 100 pounds.

Also in answer to hypothetical question which included among the facts hypothesized the fact that claimant did not lift something at which time his foot slipped from 2 to ¯12 inches, the doctor stated, "* * * in that particular case, where his foot slipped, it may have been an acute back strain independent of a pre-existing arthritis of the lumbar spine."

He also testified that the hospital records of previous back condition made no mention of sprain, but recorded pain in the lumbar area. It also appears from the hospital record that there was no notation in the history taken of any slipping prior to the severe pain suffered on the occasion in question.

Dr. Edward H. Bowdern testified on behalf of claimant. He stated he had examined claimant at the request of claimant's attorney on September 29, 1961, at which time claimant was complaining of pain in the low back area, with pain radiating down the right leg to the knee and pain in the left leg to the buttocks; that the pain was aggravated by bending, stooping, coughing or sneezing; that he had difficulty in getting out of a chair or bed.

The doctor further stated that he examined x-rays of the lower lumbar spine and that no fractures were shown. He also stated that it was his opinion based upon his examination and the x-rays that claimant had a ruptured intervertebrae disc, which in his opinion, should be confirmed by a myelogram. The doctor also stated that he made further examination on October 6, 1961, October 16, 1961, and January 1962; that the physical findings were not any different from those made on the original examination; that at the time of the last examination claimant was unable to work and was at the time of the hearing unable to work due to spasm in the lumbar muscle; that his difficulty in walking, bending, lifting and stooping make it unable for him to work; that said movements would in the witness's opinion cause pain. In answer to a hypothetical question which assumed facts disclosed by claimant's evidence including the alleged slipping on a piece of pipe, the witness stated, "The type of accident as described can cause a ruptured intervertebrae disc." The doctor also stated that such a set of facts as stated in the hypothetical question could also cause low back strain without causing an intervertebrae disc, and that the complaints detailed in the hypothetical question were such as might be expected in one with a low back strain as well as someone that might have an intervertebrae disc.

John Hanasek, who was working with Croner at the time of the incident in question testified on behalf of respondents. He stated that he saw claimant coming with the material on the hoister, and got down from the car on which he was working and walked over to where claimant stopped which was "pretty near straight across" from where they were working; that as claimant "pulled up" he was standing there waiting; that claimant got off the hoister on the left side and walked to the front to take off the materials; that he was standing on the right side at about the center of the pallet, about a foot from it; that he and claimant were facing each other; that claimant's body was the same as his with relation to the hoister; that the pallet extends beyond the side of the hoister to about the track rail on each side; that he could see the upper part of claimant's leg from "mid calf by the knee" but not from the pallet down; that he and Miranda bent over to pick up the material and claimant said "Oh my back;" that he raised up and asked claimant if he wanted to be carried to the office; that claimant stayed leaning against the hoister for about 45 minutes then got on the hoister, drove off, and worked the rest of the day.

On cross-examination, the witness stated he was looking at the material and not at claimant when he bent over; that he was not in a position to see claimant's feet; that Croner was not at the hoister helping

unload the material but walked over after when claimant exclaimed "Oh my back".

We have carefully considered the evidence in this case and have concluded that there was ample evidence to support the award of the commission. In the first place the burden was upon the claimant in this case to show an accident which arose out of and in the course of the employment. Claimant attempted to do this by his testimony and that of Croner to the effect that when he bent over to lift the material his foot slipped. The commission was not bound to believe this testimony especially if there was other evidence or circumstances in the case from which the commission could believe that claimant was not telling the truth about this all important element of his case. In deciding the case the court was influenced by the fact that the evidence showed no reference in the medical records or the employer's records of the alleged slipping.

The testimony of Croner that claimant was in front of the hoister and that he was approaching the front end of the hoister cannot be considered since it is contrary to the testimony of claimant. Claimant testified that when he bent down he was on the left side of the pallet and about in the middle thereof, and that both Hanasek and Croner were opposite him standing side by side. It also appears from the evidence that Croner situated as he was to the left of Hanasek could not have seen claimant's foot at the time the latter stooped down to pick up the material. Hence, the commission was authorized to reject Croner's testimony that he saw claimant's foot slip on the rail. There were also discrepancies in the testimony of claimant himself which reflect on his credibility, such as his evasive and contradictory testimony as to the conditions of his back prior to August, 1961, and testimony with respect to revealing to his associates and superiors the fact that he had slipped on pipes at the time in question.

It has been held time and again that the commission does not have to accept the testimony of claimant as true. Foster v. Carter Carburetor Corp., Mo. App., 264 S.W.2d 904; Garner v. Research Clinic, Mo.App., 280 S.W.2d 416, l. c. 423. This is especially true if there is a substantial basis from all the evidence for a finding that such testimony is untrue. Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136; Banks v. City of Hannibal, Mo.App., 283 S.W.2d 909, l. c. 913. This rule also applies to the testimony of claimant's witnesses. Snowbarger v. M. F. A. Central Co-op., Mo., 349 S.W.2d 224.

Under the record in this case it is clear that the finding of the commission is supported by competent and substantial evidence; that it was a reasonable result for the commission to reach and not contrary to the overwhelming weight of the evidence. Nor is there merit to the point that the commission in making its award did not give due consideration to the referee's finding and award. It is true that the finding of the referee is of importance and should be considered together with all the facts and circumstances. Such findings carry considerable weight, especially where there is a question as to the credibility of witnesses. But such findings are not conclusive, either on the commission or this court. Banks v. City of Hannibal, supra; Michler v. Krey Packing Co., supra. There is nothing in the record to show that the commission failed to consider the referee's report.

Our conclusion that the commission could reasonably find that claimant suffered no accident makes it unnecessary to rule on complaints made with respect to the second paragraph of the commission's findings.

The Circuit Court had no basis for disturbing the commission's award.

The judgment is affirmed.

WOLFE, Acting P. J., and L. F. COTTEY, Special Judge, concur.