William R. RAEF (Employee), Respondent,

v.

STOCK–HARTIS, INC. (Employer) and Liberty Mutual Insurance Co. (Insurer), Appellants.

No. 24418.

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1967.

A. Warren Francis, Lloyd A. Hamrick, Roger J. Staab, Kansas City, for appellants.

Bellemere & Bellemere, Kansas City, for respondent.

J. P. MORGAN, Special Judge.

In this workmen's compensation case, the appeal raises two questions. First, was there an "accident" as that term is defined by the statute; and secondly, was respondent a statutory employee of appellants.

Claimant originally filed his claim for compensation against the Alex Bascom Company, employer, and its insurer, The American Motorist Insurance Company, and Robert J. Vanderpool, uninsured employer. Thereafter, an amended claim brought in Stock-Hartis, Inc., as an additional employer and Liberty Mutual Insurance Company as its insurer.

After an extended hearing before the referee, an award was made in favor of claimant. He found that claimant had sustained a compensable injury resulting from an accident on June 10, 1963, and allowed 15% permanent partial disability of the body as a whole, temporary total disability and reimbursement of medical expense in the amount of $661.59 for a total of $4,161.59. The referee further found that claimant was an employee of Vanderpool, who was an uninsured minor employer; that Vanderpool was a sub-contractor of Stock-Hartis; that claimant was a statutory employee of Stock-Hartis as defined in Section 287.040 R.S.Mo. 1959; V.A.M.S., and as a statutory employer, Stock-Hartis and its insurer, appellants, were liable for the payments due under the award.

On review the Industrial Commission, Commissioner Cates dissenting, entered its final award denying compensation with the following finding:

"We find from all the evidence that the employee, William R. Raef, did not sustain an accident arising out of and in the course of his employment as alleged. Compensation, therefore, must be and is hereby denied."

On claimant's appeal, the circuit court reversed the commission by reason of its finding that "there is not sufficient competent evidence in the record to warrant said Industrial Commission in making said award denying compensation" and remanded the cause to the commission for further proceedings not inconsistent with that judgment.

The general relationship of the numerous parties was established with little variance, but divergent opinions arose as to the legal significance and obligations of each resulting from their status as established by the evidence. Claimant, Raef, was forty-seven years of age and had always been a carpenter. He had been so engaged for approximately two or three weeks doing "trim work" as an employee of Vanderpool prior to the alleged accident. Vanderpool for a period longer than a year had an oral contract to do the trim work required by Bascom in his apartment house construction projects, and he generally furnished five carpenters in addition to himself. Vanderpool submitted to Bascom each week a statement for labor, and from the funds received he individually paid the carpenters, including claimant, hired by him. The arrangement was further complicated by testimony that Vanderpool's bids on the different projects were a percentage cheaper than others in consideration for Bascom carrying the insurance on Vanderpool and reimbursing him each year the sum of $450.00 for social security payments. Although not clearly established, there was some testimony that Vanderpool had accepted suggestions of Bascom as to whom he should hire, but this was not true as to claimant. Stock-Hartis was engaged in the sale of building specialty materials consisting of kitchen cabinets, built-in appliances and builders' hardware to contractors, and had contracted with Bascom to deliver and install all kitchen cabinets required on this project. Stock-Hartis then entered into an agreement with Vanderpool for him to install

the cabinets for $22.00. It is significant that no one contends that Vanderpool's arrangements with Bascom prevented this further agreement with Stock-Hartis. The incident in question was alleged to have occurred while claimant was working for Vanderpool in carrying out this contract with Stock-Hartis.

Considering the evidence in the light most favorable to the award of the commission, the ultimate question is whether or not the circuit court was correct in finding that it was not supported by competent and substantial evidence. The claimant had the burden of proof to bring himself within the coverage of the Workmen's Compensation Act. This court can not substitute its judgment for that of the commission. Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292 (297). The award, although meeting the requirements of a general finding Leilich v. Chevrolet Motor Company, 328 Mo. 112, 40 S.W. 2d 601, falls short of that recommended by our Supreme Court in Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136 at 142, wherein it was stated: "Findings of fact are required by Secs. 287.460 and 287.-480; and one of the questions on appeal, as provided by Sec. 287.490, is whether the facts found by the Commission support the award. Thus we think these statutory provisions contemplate an unequivocal affirmative finding as to what the facts are." Particularly should this be true in those instances, such as this case, where a decision by the referee is reversed by a divided commission without revealing if such action resulted from its finding the facts otherwise, or that the conclusion reached was improper in view of the facts found. However, review is possible from the record as made.

The direct examination of claimant touching on the manner in which his alleged injury occurred is as follows:

"A.   Well, I started to set that cabinet. I picked it up and put it in place, and I reached around for the ham-mer, when I reached for the hammer the cabinet started to slip, and I gave it a shove to put it back up with my left hand, and when I did something popped in my back.

"Q.   Then what, if anything, did you do?

"A.   Well, I hit the floor and the cabinet hit the floor, and I laid there a little bit, and finally I crawled over to some trestles I had sitting with underlay on them, and I crawled up on the underlay and I laid there awhile."

Cross-examination emphasized the following:

"Q.   And you pushed it back up into place, and it was when you pushed it back up that you had pain in your back?

"A.   That is right.  When I pushed it back up that my back popped.

"Q.   Then the first time you had pain in your back was when you pushed it back up into position?

"A.   That is right."

The employer argues, "The cabinet 'slipping' did not constitute an accident in this case because it did not produce at the time objective symptoms of an injury. The evidence is clear that the injury (pain in back) was caused when the claimant pushed the cabinet back into position," and in the absence of evidence in the record as to the weight of the cabinet, the claim can not be bottomed on "abnormal strain" to bring it within the doctrine set out in Crow v. Missouri Implement & Tractor Co., Mo., 307 S.W.2d 401. This contention is ill-founded, because it has been held that where events followed in rapid succession, and formed one continuous chain uninterrupted by an intervening cause, and terminated in the employee's injury, they logically could not be separated. Jones v. Purity Textiles Corp., Mo.App., 328 S.W.2d 714; Brother-

ton v. International Shoe Company, Mo. App., 360 S.W.2d 108. Whether or not an accident occurred must be determined from the events reflected in that period of time between the cabinet first slipping and that moment when it and the employee both came to rest on the floor. The controlling statutory definition of "accident" as set out in Section 287.020(2) is: "The word 'accident' * * * shall * * * be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." The slipping of the cabinet would surely be an "unexpected event happening suddenly", as it was not of a preconceived design nor a planned incident of cabinet installation. "Violently" is a relative term having a connotation sufficiently broad to cover causes found in that vast area between the most minor compensable injury and accidental death, and is properly descriptive of any cause efficient in producing a harmful result. Claimant testified that his back hurt the rest of the day and that he consulted a doctor that evening as well as reporting the injury to his immediate employer, Vanderpool. No conflicting or contradictory evidence was offered as to these events, and claimant made a prima facie case within the statutory definition of "accident" in its usual sense, and no opinion is required as to whether or not such facts would sustain a claim based on the theory of "abnormal strain."

Some four days later and prior to claimant's subsequent confinement in a hospital for treatment of his back, a disturbance on the project involved a conflict between the painters and carpenters. It apparently was dominated by claimant's son of some three-hundred pounds. A painter, who had been thrown through a louvered door and down a flight of steps during this altercation, appeared as a witness. He said claimant had been shoved against a pile of sheet-rock and several days later had stated he hurt his back in the fight. A portion of his testimony is as follows:

"Q. I will ask if Mr. Bill Raef ever struck you?

"A. Well, I imagine he did.

"Q. Don't imagine. I want to know whether or not—you are under oath, I want to know whether or not he struck you?

"A. Well, I just couldn't say."

\* \* \* \* \* \*

"Q. What did he say was hurting him?

"A. He said his back was hurt in the fight.

"Q. Did he tell you that?

"A. He never did tell me, because I wouldn't talk to him."

Premised on claimants denial of this testimony on rebuttal, employer in its reply brief asserts that the credibility of claimant thereby became an issue and that it was a question solely for the Industrial Commission, because " * * * they could have found against the claimant on the basis that they did not believe his testimony." This argument correctly states a general principle that was concisely set out in the recent case of Miranda v. American Refrigerator Transit Co., Mo.App., 392 S.W.2d 413 (419), wherein it was stated: "It has been held time and again that the commission does not have to accept the testimony of claimant as true. Foster v. Carter Carburetor Corp., Mo.App., 264 S.W.2d 904; Garner v. Research Clinic, Mo.App., 280 S.W.2d 416, 1. c. 423. This is especially true if there is a substantial basis from all the evidence for a finding that such testimony is untrue. Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136; Banks v. City of Hannibal, Mo.App., 283 S.W.2d 909, 1. c. 913. This rule also applies to the testimony of claimant's witnesses. Snowbarger v. M.F.A. Central Co-op., Mo., 349 S.W.2d 224." See also

Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149. It is difficult to ascertain the true import of this argument of the employer in view of the matter-of-fact manner in which it is presented. Does it mean that the conflict of testimony concerning the fight, and claimant's supposed statement that his back was hurt in the fight, created an issue of credibility as to whether or not "an accident" occurred? If this is the gist of the argument, it can not be sustained because the evidence as to the fight was not inconsistent with the occurrence of the accident as testified to by claimant. In other words, he could have suffered the accident as claimed and received an injury to his back, and he also could have participated in the fight and hurt his back again at this later date. Thus this evidence concerning the fight would be material as to whether or not the claimed disability resulted from the injury at the time of the accident, but it would not be material to the issue of whether or not the accident occurred. In this light, this conflict in the testimony did not create a question of credibility on the issue of "accident". However, to accept this argument in its broadest sense, it could mean the employer contends that because of the conflict between the testimony of the painter and the testimony of the claimant in relating details of the fight, all of claimant's testimony was impeached, including his uncontradicted testimony as to his alleged accident. The thrust of this argument is immediately confronted with the fact the award was not made upon any "stated" ground of lack of credibility of claimant or his immediate employer, Vanderpool. This argument would further presuppose a reluctance on the part of the commission to indicate that it had exercised its prerogative, as trier of the facts, to refuse to accept the testimony of a witness as true. The weakness of such an assumption is evidenced by those instances where the commission has rather forcefully outlined its reasons for not giving full credence to the testimony of a witness. McClelland v. Hagerty Wrecking Co., Mo.App., 384 S.W.

2d 93 (95) ; Miranda v. American Refrigerator Transit Co., supra. In searching the record to determine if any question of credibility affected the conclusion reached by two members of the commission, the findings of the referee assume more significance, although they were not binding on the commission nor on this court. Banks v. City of Hannibal, Mo.App., 283 S.W.2d 909; Michler v. Krey Packing Co., supra. In finding in favor of claimant, the referee did not directly or by inference question the credibility of any witness. As previously noted, the final award is silent on any question of credibility. Significantly, the dissenting opinion in the record makes no reference to such an issue, but refers to the "slipping of the cabinet" and other related facts as described by claimant and concludes that the findings of the referee should have been affirmed. In the absence of any of the record entries reflecting that the award of the commission was based on lack of credibility, any basis for employer's argument must evolve, if at all, from the evidence. In addition to the testimony heretofore set out, claimant's immediate employer, Vanderpool, testified as follows:

"Q. Were you present on the job on June 10, 1963?

"A. I either came over that afternoon or the next morning.

"Q. Did Mr. Raef request to see a doctor?

"A. He said he was going to try and wait if he could. We were so busy, if he could possibly get by on pain pills that he was going to try to get to a certain spot on those apartments, but he wouldn't do it then. He was going to get it done, or else."

This testimony was consistent with that of claimant and is indicative that "some" injury was suffered by claimant prior to any possible injury from the fight several days later. The evidence does not show any reasonable or substantial basis

for refusing to believe the uncontradicted evidence of the claimant concerning the accident. The employer, in a further effort to buttress its argument that credibility might have been an issue, quotes that portion of the award reading, "We find from *all* the evidence * * *", and then contends this indicated the commission " * * * did not limit themselves to the testimony of the claimant alone." It would be rather presumptuous to impugn this statement of the commission with the dire implications suggested. Quite to the contrary, it is assumed that the commission did review *all* of the evidence, and it is not reasonable to give the terminology used any strained interpretation. "It is not necessary or appropriate that we search for any hidden or subtle meaning." Smith v. Terminal Transfer Company, Mo.App., 372 S.W.2d 659 (668). The only reasonable synthesis that can be resolved, after consideration of the record, is that credibility was not an issue and that a majority of the members of the commission determined that the incident of June 10, 1963, was not an "accident" as that term is defined by the statute. The finding of this ultimate fact by the commission necessarily involved an interpretation and application of the law and the conclusion reached is not binding on this court. Merriman v. Ben Gutman Truck Service, Inc., Mo., supra.

■ From a review of the entire record, it is apparent that there is no substantial and competent evidence in the record to support the finding of the commission that no accident, as that term is defined by the statute, occurred, and that the commission's finding is against the overwhelming weight of all the evidence.

Although not necessary for a disposition of this appeal, the parties have briefed and presented the issue as to whether or not claimant was a statutory employee of Stock-Hartis as provided in Section 287.-040(1). In view of the arguments made, that issue would have to be decided on remand and should be disposed of at this time. The statutory requirements were recently listed by this court in Shireman v. Rainen Home Furnishers, Inc., 402 S.W.2d 64 and 68: "The evidence must show (1) that the work was performed under a contract, (2) that the injury occurred on or about the premises of the employer, and (3) that the injury must have occurred while the employee was doing work in the usual course of employer's business." It is agreed that Stock-Hartis had contracted with Vanderpool for installation of the cabinets. However, the latter two requirements are in dispute. The original bid of Stock-Hartis submitted to Bascom is of interest:

> "I would like to take this opportunity to submit my quotation for the Kitchen Cabinets as per your drawings for the Apartment Building at 4526 Penn.

> "This quotation is for the Willett Cabinets just like the ones I installed for your company at 4521 Jefferson.

> "The total price for cabinets, top material and installation is $4,574.32 * * * signed: Stock-Hartis, Inc."

■ Mr. Hartis testified installation was not regularly required, and, "Q. If you sold cabinets, you had to rely upon an outside contractor to install them? A. Where they requested installation, where the sale was contingent upon installation, yes." It is obvious that willingness to make an installation if necessary to make a sale brought such work into the scope of its "usual business" as evidenced by its having done so in the past and readiness to do so in the future. Noland v. George Tatum Mercantile Co., Mo., 313 S.W.2d 633. This leaves only one question which is whether or not the accident "occurred on or about the premises of the employer." The employer points out that the home office of Stock-Hartis was at 2022 Charlotte Street and the construction project was located at 4526 Pennsylvania, both in Kansas City, Missouri. This suggestion does not give an answer but does emphasize the problem.

**208**

"On or about the premises" as used in the statute has not been limited to permanent situs of the employer's business, but has been held to include other locations that temporarily may be under control by virtue of the work being done. In Sargent v. Clements, 337 Mo. 1127, 88 S.W.2d 174, claimant's husband was killed on the right-of-way while acting as an independent contractor in doing blasting for a contractor engaged in building a section of public highway, and the court at page 178 said: "The term 'premises' as so used should not be given a narrow or refined construction, but rather in keeping with both the spirit and specific direction * * * of the Workmen's Compensation Act, should be liberally construed and applied. We discover no intention on the part of the Legislature to limit or restrict the term 'premises' as here used to premises of which the employer is the owner * * *. We think it a fair interpretation * * * to hold that 'premises' as there used contemplates any place, under the exclusive control of the employer, where the employer's usual business is being carried on or conducted * * *." After Bascom accepted the bid of Stock-Hartis to sell and "install" the cabinets, a right of ingress and egress to make such installation would be implied, Baker v. Iowa-Missouri Walnut Log Co., Mo.App., 270 S.W.2d 73, and this would be a right exclusive with Stock-Hartis and not available to the general public. An employee of Stock-Hartis went to the scene and marked the places for installation with corresponding numbers on the cabinets. At this place and time and in connection with the work being done, Stock-Hartis did have exclusive control, and it of necessity follows that when claimant was hanging these cabinets in accordance with its direction, he was on or about its premises as contemplated by the statute. With all of the statutory requirements being present, the referee correctly found claimant to be a statutory employee of Stock-Hartis.

We, therefore, find, that the award of the commission is not supported by substantial and competent evidence and that it is against the overwhelming weight of all the evidence in the case, and we affirm the judgment of the circuit court reversing the award of the commission and remanding the cause for further proceedings.

All concur.