Gary G. WILSON, Plaintiff–Appellant,

v.

ALTRUK FREIGHT SYSTEMS, INC., Defendant–Respondent.

No. 17509.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 12, 1991.

Jim McNabb, Marshfield, for plaintiff-appellant.

William W. Francis, Jr., Placzek & Francis, Springfield, for defendant-respondent.

SHRUM, Presiding Judge.

The plaintiff Gary G. Wilson appeals from a summary judgment denying his negligence claim for damages. The defendant Altruk Freight Systems, Inc., claims the trial court is without subject matter jurisdiction. Rule 55.27(a)(1). That defense is based upon the assertion that the plaintiff is either (a) an employee of the defendant, or (b) a "statutory employee," [1] thus limiting his recovery to the provisions of the Missouri Workers' Compensation Law.[2]

The question presented is whether, upon review of the record in the light most favorable to the plaintiff, there is any material issue of fact which could negate the claim that the plaintiff is (a) the defendant's employee, or (b) is deemed by § 287.040.1, RSMo 1986, to be the defendant's employee.

Finding no genuine issue of fact that could negate a determination that the plaintiff was a "statutory employee" under § 287.040.1, we affirm.

---

**1.** Section 287.040.1, RSMo 1986, provides: "Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured ... on or about the premises of the employer while doing work which is in the usual course of his business."

**2.** Section 287.120.1, RSMo 1986: "Every employer subject to ... this chapter shall be liable, irrespective of negligence, to furnish compensation under ... this chapter ... for personal injury ... of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person...." And § 287.120.2, RSMo 1986, reads in part: "The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise...."

## FACTS

The plaintiff was injured in Springfield, Missouri, on August 25, 1989, while unloading a refrigerated trailer-truck unit owned by the defendant. The injury occurred when the plaintiff's hand contacted a fan inside the trailer as he "went about performance of his duty of unloading the ... trailer...."[3] The plaintiff alleges that on "the 25th day of August, 1989, [he] was hired by defendant to unload a trailer of candy product at the warehouse ... of Associated Wholesale Grocers, Inc. ... in Springfield...."[4] Melvin Sloniker, the defendant's truck driver,[5] hired the plaintiff to unload the defendant's trailer on this occasion as he had done 10 to 15 times previous to August 25, 1989. The reason Sloniker did the hiring appears from the contract between the defendant (carrier) and Nichols (truck owner who furnished Sloniker as a driver). The contract states:

24. Contractor shall load and unload the freight if such services are provided for in Carrier's tariffs; if not provided for in Carrier's tariffs, Contractor shall not load or unload the freight. The compensation set forth in Exhibit A includes payment for these services.

The defendant's employee Angela Arzaga testified that sometimes, as in this case, it was necessary for their drivers to hire "lumpers"[6] to unload. When that occurred the defendant's driver hired the "lumper," supervised him, and paid him when the job was done. Recognizing that drivers often used "lumpers" to load and unload, the defendant provided workers' compensation insurance for the leased truck drivers (such as Sloniker) and for the "lumpers" (such as the plaintiff).

The plaintiff, working as a "lumper," has regularly unloaded trucks at the Associated Wholesale Grocers (AWG) warehouse since 1988. Usually, he gets his jobs by "contacting drivers of trucks that have loads coming to [the] warehouse." He calls the drivers by C.B. or drivers call him at home after he has unloaded for them several times. The price for unloading is negotiated with the truck driver each time after the driver tells the plaintiff how many pieces are to be unloaded and the weight per piece. From his past experience, the plaintiff was familiar with the way AWG "require[d] pieces to be stacked on pallets" and had satisfactorily met AWG's requirements over a long period of time.

The August 25, 1989, hiring was handled in the customary fashion as follows. Sloniker called the plaintiff and asked if he wanted to unload a load of Brach's candy for the defendant. The plaintiff agreed. After going to the dock, looking at the load and reviewing the "breakdown sheet," the plaintiff quoted Sloniker a price of $50 for the unloading. Sloniker agreed to the price and left the area. The plaintiff had no further contact with Sloniker until after he was injured.

While Sloniker never attempted to direct the plaintiff in the manner he was to perform his work and he was not "subject to the control of defendant, except as to the

---

3. This allegation is found in paragraph 3 of the first amended petition.

4. This allegation is part of paragraph 2 of the plaintiff's first amended petition. The defendant's answer to paragraph 2 reads: "Defendant admits that plaintiff was employed, but is unable to admit or deny the remaining allegations in paragraph 2; however, defendant affirmatively defends and avers that plaintiff was an employee, was hired by this defendant, and that plaintiff has judicially admitted his employment by virtue of his pleadings and that any remedies sought in this action are barred by the exclusive remedy statute contained within Chapter 287 R.S.Mo. (1987)."

5. The truck which pulled the defendant's trailer was owned by Bert Nichols. Pursuant to a written lease between Nichols and the defendant, Nichols furnished the truck and driver and received 67% of the gross tariff revenue (less 2.98% insurance charge) for freight hauled by that truck and driver. The defendant furnished the trailer and paid all employer tax contributions for the truck driver, including social security, worker's compensation, and unemployment.

6. The record does not reveal the background for use of the term "lumper." It does reveal that the term was used to describe workers who are at a location where there is a lot of freight activity. They are available to work at such locations for whoever engages them.

result of his work," [7] the plaintiff did testify that Sloniker could have pulled him off the job at any time for any reason, including dissatisfaction with how the unloading was being done. When specifically asked about who gave him instructions on August 25, 1989, about how to get unloaded and where to unload, the plaintiff answered: "I'd done it long enough no one had to give me—I followed the work sheets that A.G. furnishes." Plaintiff also testified that his standing instruction from Sloniker was to work "hard and fast."

The defendant operated in the belief it was obligated to provide workers' compensation insurance for its drivers and lumpers. At the time of the plaintiff's injury, it had such insurance with The Travelers Insurance Company which covered the plaintiff. Timely reports of the plaintiff's injury were filed by the defendant with Travelers.

From the record, the trial court determined it lacked subject matter jurisdiction. It entered a summary judgment for the defendant. This appeal followed.

STANDARD OF REVIEW

Summary judgment is "an extreme, drastic remedy" and on review of a summary judgment we examine the record in the light most favorable to the party against whom the motion was filed. *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384, 385–86 (Mo.banc 1991). We must accord to that party all reasonable inferences which may be drawn from the evidence. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo.banc 1987). The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact. *Id.*

However, a trial court may enter a summary judgment where the pleading, depositions and admissions on file, together with the affidavits, if any, show no genuine issue of material fact exists and that the law entitles the moving party to a favorable judgment. Rule 74.04(c); *Ronollo v.*

*Jacobs*, 775 S.W.2d 121, 125 (Mo.banc 1989). Summary judgment is an appropriate vehicle for the assertion of an affirmative defense entitling a party to a judgment as a matter of law. *Herron v. Whiteside*, 782 S.W.2d 414, 416 (Mo.App.1989).

It is no longer necessary for the movant to show entitlement to summary judgment by unassailable proof as was necessary before the deletion of subsection (h) from Rule 74.04. *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 457 (Mo.App.1991); *Union Mut. Ins. Co. v. Brown*, 809 S.W.2d 144, 145 (Mo.App.1991); *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990); *Defino v. Civic Center Corp.*, 780 S.W.2d 665, 667 (Mo.App.1989). To meet and overcome a motion for summary judgment, the opposing party may not rest upon mere allegations or denials, but must set forth specific facts that demonstrate the existence of an outstanding genuine issue of material fact. *St. Charles County v. Dardenne Realty Co.*, 771 S.W.2d 828, 830 (Mo.banc 1989). Mere doubt and speculation do not create a genuine issue of material fact. *Id.*

With the above principles firmly in mind, we examine the single point presented.

DISCUSSION AND DECISION

When the Workers' Compensation Act is applicable, it supersedes any right that an injured party might otherwise have to maintain a common-law action. *Walton v. United States Steel Corporation*, 362 S.W.2d 617, 620 (Mo.1962); *Brown v. Gamble Const. Co., Inc.*, 537 S.W.2d 685, 689 (Mo.App.1976); *Sippel v. Custom Craft Tile, Inc.*, 480 S.W.2d 87, 89 (Mo.App.1972). This is true when an employer-employee relationship exists under § 287.120. *Marie v. Standard Steel Works*, 319 S.W.2d 871, 875 (Mo.banc 1959); *Sheen v. DiBella*, 395 S.W.2d 296, 298 (Mo.App.1965). It is equally true when the injured party is a "statutory employee" pursuant to § 287.040.1. *Montgomery v. Mine La Motte Corporation*, 304 S.W.2d 885, 890–91 (Mo.1957).

7. The language that the plaintiff was not "subject to the control of defendant except as to the result of his work" is an allegation in paragraph 2 of the plaintiff's petition.

■ The "statutory employee" provision of the Act establishes a constructive employment relationship in order to extend coverage of the Act to employers who have work done by contract. *McGuire v. Tenneco, Inc.*, 756 S.W.2d 532, 534 (Mo.banc 1988). The elements which must co-exist in order to categorize an individual as a statutory employee under § 287.040.1 are: (a) the work was performed under contract; (b) the injury occurred on or about the premises of the alleged statutory employer; and (c) when injured, the alleged statutory employee was doing work which was in the usual course of business of the alleged statutory employer. *McGuire*, 756 S.W.2d at 534; *Raef v. Stock–Hartis, Inc.*, 416 S.W.2d 201, 207 (Mo.App.1967).

■ The plaintiff here does not dispute element (a), i.e., that his work of unloading the trailer was done under contract. However, he does dispute elements (b) and (c).

(I) USUAL COURSE OF BUSINESS: As to element (c), the plaintiff claims that there was no evidence that the defendant engaged in unloading trucks customarily. He points to his affidavit in which he states that Sloniker, to his knowledge, had never unloaded trucks at the AWG dock. He suggests that this creates a genuine issue of material fact as to element (c). We disagree. The fact that the defendant's regular employees did not normally unload the trucks does not preclude a finding that such work was an integral and essential part of the defendant's business. *Viselli v. Missouri Theatre Bldg. Corp.*, 361 Mo. 280, 234 S.W.2d 563, 566 (1950).

In the truck lease between the defendant and Nichols, was a provision that required the truck owner and his employees to "load and unload the freight if such services are provided for in Carrier's tariffs." The plaintiff's affidavit is replete with statements that at the AWG warehouse he always contracted with and was paid by truck drivers for his unloading services. That was the consistent practice followed when the plaintiff contracted with Sloniker to unload the defendant's trailer. Unloading of the trailers at AWG was not part of

AWG's usual business. Otherwise, the plaintiff would have been contracting with AWG or its employees to unload the trailers at AWG. It is obvious from paragraph 24 of the defendant's lease that the defendant was willing to provide unloading services for the shipper or receiver if compensated for such service, i.e., when the tariff so provided. That willingness coupled with the fact that the plaintiff consistently contracted with Sloniker to unload the defendant's trailer provides ample evidence that unloading of the trailer was part of the usual business of the defendant. *Raef*, 416 S.W.2d at 207.

Evidence that truckers usually hired lumpers to unload their trailers at AWG or that Sloniker had never unloaded the defendant's trailer at AWG does not raise a material issue about the scope of the defendant's usual business. The definition of "usual course of business" in the Act does not require that an employer's regular employees perform the work undertaken by the statutory employee as a condition of coverage under the Act. *McGuire*, 756 S.W.2d at 535–36. Plaintiff admitted in his petition that he "was hired by defendant to unload a trailer of candy product...." That is an admission by the plaintiff that he knew he was working for the defendant. Therefore, whether Sloniker had ever unloaded the defendant's trailer is not material to a determination of the scope of the defendant's usual business. Similarly, the fact that other truckers failed to unload their trailers is not evidence which defines the scope of the defendant's usual business.

The plaintiff also argues that the issue of whether unloading the trailers was part of the defendant's usual business is a jury question which should have been submitted to the jury. He cites *Walton*, 362 S.W.2d at 618, and *Sippel*, 480 S.W.2d 87, as his authority.

■ Preliminarily, we observe that it is not the rule that the question whether one is a statutory employer or employee is always to be resolved by the jury. *Brown*, 537 S.W.2d at 689. "If the evidence shows, as a matter of law, that plaintiff was a

statutory employee of the defendant, the trial court should direct a verdict for defendant." *Id.* "While each case must be determined upon its particular facts, *Viselli v. Missouri Theatre Bldg. Corp.,* [361 Mo. 280] 234 S.W.2d 563, 565[1] (Mo.1950), when the facts are undisputed and no doubt exists, the court may declare the issue as a matter of law. *McKay v. Delico Meat Products Co.,* 351 Mo. 876, 174 S.W.2d 149, 157[9] (1943)." *Id.*

The facts in *Walton* were that the only work the truck driver did on defendant's premises was to drive a truck to a loading point and "spot" it for loading by the defendant, supervise the loading, and drive away. Most all of the driver's work was away from the defendant's premises. In *Sippel,* a truck driver for a common carrier was delivering carpet to defendant. He was injured by defendant's employee after being asked to assist that employee in unloading. In both cases the appellate courts determined that it was not clear that all reasonable minds would conclude that the plaintiff's work, i.e., spotting and supervising in *Walton* and assisting in unloading in *Sippel,* was an operation of the usual business which the respective defendants carried on upon their premises. Thus, a question of fact arose in each case which was proper for the jury to resolve.

We find that the facts in this case are clearly distinguishable from those in *Walton* and *Sippel.* Here, the facts identify the plaintiff as performing and doing the usual work of the defendant, i.e., unloading the defendant's trailer. The plaintiff's affidavit, together with the contract provisions, establish that unloading the defendant's trailer was not merely incidental or auxiliary to the defendant's usual business (as may have been true in *Walton* and *Sippel*) but was part of the defendant's usual business. We find the facts here established, as a matter of law, that plaintiff was engaged in an operation that was part of the defendant's usual work. *See, e.g., Bailey v. Morrison–Knudsen Company,* 411 S.W.2d 178 (Mo.1967); *Greiser v. Western Supplies Company,* 406 S.W.2d 13 (Mo.1966); *Anderson v. Benson Manufacturing Company,* 338 S.W.2d 812 (Mo.

1960); *Brown,* 537 S.W.2d 685; *Offutt v. Travelers Insurance Company,* 437 S.W.2d 127 (Mo.App.1968).

■ **(II) WORK DONE ON PREMISES:** The plaintiff also complains that element (b), that the work must be done "on or about the premises," was not shown as a matter of law. He points to dictionary definitions of "premises" as being real estate. He then argues that the term "premises" as used in § 287.040.1 cannot extend to vehicles such as the defendant's trailer.

Such a narrow view of the term "premises" as used in the Act has been consistently rejected.

> The term "premises" as so used should not be given a narrow or refined construction, but rather, in keeping with both the spirit and specific direction ... of the Workmen's Compensation Act, should be liberally construed and applied. We discover no intention on the part of the Legislature to limit or restrict the term "premises" as here used to premises of which the employer is the owner.... We think it a fair interpretation ... to hold that "premises" as there used contemplates any place, under the exclusive control of the employer, where the employer's usual business is being conducted....

*Sargent v. Clements,* 337 Mo. 1127, 88 S.W.2d 174, 178 (1935) (claimant's husband was statutory employee when he was killed on the right-of-way while acting as an independent contractor in doing blasting for a contractor who was building a public highway). Similarly, in *Cobb v. Standard Acc. Ins. Co.,* 31 S.W.2d 573, 575 (Mo.App.1930), this court said:

> The words "on or about" must be liberally construed. The loading of the ties was an important adjunct to the industry in which defendant was engaged.... [I]t is not unreasonable to hold that the general words "on or about" the premises would include the loading place located some distance away.

■ In *Cobb,* the claimant's husband was a statutory employee when he was killed loading railroad ties aboard railroad

cars "some distance away" from the employer's place of business. In keeping with the liberal construction of the term "premises," we held in *Simpson v. New Madrid Stave Co.*, 227 Mo.App. 331, 52 S.W.2d 615, 616 (1932), that the "premises" of the statutory employer is any place where, in the usual operation of his business, it is necessary for those whom he has employed to do the work to be while doing it. And "premises" as used in the "statutory employee" context include locations that temporarily may be under the exclusive control of the statutory employer by reason of the work being done. *Huff v. Union Elec. Co.*, 598 S.W.2d 503, 511 (Mo.App.1980); *Boatman v. Superior Outdoor Advertising Co.*, 482 S.W.2d 743, 745 (Mo.App.1972). *See also Raef*, 416 S.W.2d at 208. The "exclusive control" requirement indicates such a control of the "premises" by the statutory employee that the general public does not have an equal right to use them along with the employer and independent contractor. *Boatman*, 482 S.W.2d at 745; *Offutt*, 437 S.W.2d at 130.

The record here reveals that loading and unloading of trailers was an important adjunct of the defendant's business. Through its driver, the defendant had possession of the trailer to the exclusion of the public. The trailer, while parked at the AWG warehouse for unloading, is a place where, in the usual operation of the defendant's business, it is necessary for the plaintiff to be while doing the work he is employed to do, namely, unloading. As such, the plaintiff was injured "on or about the premises" of the defendant within the meaning of the Act. *Sargent*, 337 Mo. 1127, 88 S.W.2d 174; *Simpson*, 227 Mo. App. 331, 52 S.W.2d 615; *Cobb*, 31 S.W.2d 573.

We conclude that unloading the trailer constituted work which is within the usual course of the defendant's business; such work was regularly performed by the defendant's employees. The plaintiff performed that work pursuant to a contract between the defendant (acting through its truck driver) and the plaintiff. The plaintiff received his injuries while unloading "on or about the premises" of the defen-dant within the meaning of the Act. The defendant's activities met the requirements of § 287.040.1. He was of the result reached and we must sustain the judgment if the result reached was correct on any tenable basis. *Strunk v. Hahn*, 797 S.W.2d 536, 538 (Mo.App.1990). Our determination that the defendant was a statutory employee requires that we affirm the judgment of the trial court. It is not necessary that we determine if the plaintiff was an employee of the defendant.

The judgment of the trial court is affirmed.

FLANIGAN, C.J., and MAUS, J., concur.