Irene MARTIN and Walter Martin,
Jr., Plaintiffs/Appellants,

v.

CITY OF WASHINGTON, Missouri, and
John L. May, Archbishop of St. Louis,
d/b/a St. Francis Borgia High School,
Defendants/Respondents.

No. 74852.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1993.

Timothy J. Melenbrink, Union, for plaintiffs, appellants.

Michael G. Berry, Douglas L. Van Camp, Mary Doerhoff Winter, Jefferson City, Ralph V. Hart, St. Louis, for defendants, respondents.

PRICE, Judge.

Irene Martin and Walter Martin, Jr., appeal the dismissal of their petition for damages against the City of Washington and the grant of summary judgment in favor of John L. May, Archbishop of St. Louis, doing business as St. Francis Borgia High School. We reverse the dismissal and remand for further proceedings against the City, and we affirm the granting of summary judgment.

## I.

In reviewing the circuit court's dismissal of a petition, this Court determines if the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. We treat the facts averred as true and construe the averments liberally and favorably to the plaintiff. *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 834 (Mo. banc 1985). A petition is not to be dismissed for failure to state a claim if any set of facts is asserted which, if proved, would entitle the plaintiff to relief. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988).

On review of a defendant's motion for summary judgment, we view the record in the light most favorable to the plaintiffs, according to plaintiffs all reasonable inferences that may be drawn from the evidence. *Id.* Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits filed in support of the motion, demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Rule 74.04(c); Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 709 (Mo. banc 1990).

## II.

Viewed in the light most favorable to plaintiffs, the record discloses the following facts. On the evening of November 3, 1978, Irene and Walter attended a football game between St. Francis Borgia High School and another school. They sat in the crowded bleachers at the municipal park where the game was held. About an hour into the game, Irene rose to watch an important play. The board on which she was standing cracked without warning and dropped her to the ground below. The resulting broken ankle required two surgeries and a lengthy convalescence.

On October 31, 1983, Irene and Walter filed a petition for damages (including a loss of consortium claim on Walter's behalf) against the City, which owns the park and the bleachers, and the School, which contracted with the City to use the facilities for intermural athletic events. The petition avers that the park facilities were maintained by defendants for public use and that defendants had a duty to provide safe facilities for the use of spectators at public sporting events. It further alleges that defendants negligently failed to repair the bleachers or maintain them in a safe condition, allowed the bleachers to remain in a cracked and weakened condition, and failed to warn spectators of the dangerous and defective condition of the bleachers, although they knew or ought to have known that such condition was likely to result in injury to spectators such as Irene. The petition also pleads negligence by means of res ipsa loquitur, and avers that plaintiffs' damages were caused by defendants' negligence.

The City filed a motion for summary judgment on December 7, 1988. This was treated as a motion to dismiss and sustained by the trial court. The court ruled that plaintiffs' failure to plead that the City had liability insurance coverage precluded application of the sovereign immunity exception under the statutes in effect when

the accident occurred. The trial court also sustained the School's motion for summary judgment, filed on June 21, 1990. The court found that the School had no knowledge of any defect and no duty to inspect the bleachers for defects and warn. Plaintiffs' subsequent motion to set aside this judgment was overruled. This appeal seeks to reverse the dismissal and summary judgment in favor of defendants.

### III.

Plaintiffs' first point on appeal is that the trial court erred in granting the City's "motion to dismiss," actually a motion for summary judgment, as noted above. The motion claimed that under the law in effect at the time of Irene's accident, the City could be sued only if it had waived its sovereign immunity by purchasing tort liability insurance to cover such an accident. *Sections 537.600* and *537.610*, RSMo 1978. The motion further alleged (without the benefit of supporting affidavits) that the City's insurer on the relevant date had been declared insolvent; thus, the City must be deemed to be uninsured for the purpose of waiving sovereign immunity. *Orlando v. St. Louis Cty.*, 740 S.W.2d 393, 395 (Mo.App.1987). Noting that a motion for summary judgment may be treated as a motion to dismiss, the trial court ruled that the petition failed to state a cause of action because plaintiffs did not plead that the City had waived its sovereign immunity by purchasing liability insurance.

■ Sovereign immunity as it existed prior to September 12, 1977, remains in effect except to the extent waived, abrogated, or modified by statute. *Section 537.-600.1*, RSMo Supp.1992. Immunity is waived as to torts arising from (1) the governmental operation of motor vehicles, and (2) dangerous conditions on government property. *Id.* The trial court predicated its dismissal on what it deemed to be

the applicable law on the date this cause of action accrued. At that time, this Court had held that the statutory waiver of immunity was operative only to the extent of the public entity's liability insurance coverage. *Bartley v. Special School Dist. of St. Louis Cty.*, 649 S.W.2d 864, 870 (Mo. banc 1983).

In response to *Bartley*, however, the General Assembly amended the statute in 1985 to waive immunity in the two specified circumstances whether or not the public entity is functioning in its governmental or in its proprietary capacity, and whether or not it is covered by tort liability insurance. *Section 537.600.2*, RSMo Supp.1992; *Oldaker v. Peters*, 817 S.W.2d 245, 249 (Mo. banc 1991).

This Court has had occasion to examine the reach of the 1985 amendments three times since *Orlando* was decided. Each time, the Court concluded that these amendments apply *retroactively*, and that the sovereign has waived immunity in all such cases, past and future.[1] *Oldaker*, 817 S.W.2d at 250; *Mispagel v. Missouri Highway & Transp. Com'n*, 785 S.W.2d 279, 281 (Mo. banc 1990); *Wilkes v. Missouri Highway & Transp. Com'n*, 762 S.W.2d 27, 28 (Mo. banc 1988).

In accordance with the decisions cited, we conclude that plaintiffs need not plead or prove the existence of insurance coverage in order to avail themselves of the immunity waiver. Likewise, plaintiffs' argument that operating the municipal park and bleachers is a proprietary function is irrelevant under the statute as amended, in view of the fact that the condition alleged clearly falls within the "dangerous condition" exception to § *537.600.2*. See *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). In stating a claim against a governmental entity, immunity is waived pursuant to § *537.600.2*, RSMo, if the plaintiff alleges:

1. The Court's reasoning is found in *Wilkes,* 762 S.W.2d at 28:

A statutory provision that is remedial or procedural operates retrospectively unless the legislature expressly states otherwise.... An act abrogating sovereign immunity does not create a new cause of action but provides a

remedy for a cause of action already existing for which redress could not be had because of the immunity.... As presently enacted, § 537.600 provides a cause of action whose remedy was previously barred so it is procedural or remedial. *(Citations omitted.)*

(1) that the property was in a dangerous condition;

(2) that the plaintiff's injuries directly resulted from the dangerous condition;

(3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury plaintiff incurred; and

(4) that a public employee negligently or wrongly created the condition within the course of his or her employment, or that the public entity had actual or constructive notice of the dangerous condition.

*Kanagawa,* 685 S.W.2d at 835.

The judgment dismissing plaintiffs' claims against the City is reversed and that cause is remanded to the trial court for further proceedings. This determination makes it unnecessary to consider plaintiffs' contention that the trial court should have allowed them the opportunity to amend their petition, rather than taking the "drastic measure" of dismissal.

### IV.

### A.

■ Plaintiffs' second point claims that the trial court erred in granting the School's motion for summary judgment. The purpose of summary judgment is to move the parties beyond the bare allegations in their pleadings and to determine if a dispute in fact exists for trial. Our *Rule 74.04,* like the nearly identical federal *Rule 56,* allows the parties and the court to avoid the unnecessary expense, burden, and delay of a trial upon a showing:

(1) that there is no genuine issue as to

(2) any material fact, and

(3) that the moving party is entitled to judgment as a matter of law.

Three recent United States Supreme Court decisions have set out, with a degree of clarity theretofore absent, the framework within which a summary judgment determination should be made under the federal rule.[2] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Most pertinent here are the *Celotex* and *Anderson* decisions. Specifically, *Celotex* states that a properly supported motion for summary judgment may be made "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[3] 477 U.S. at 322, 106 S.Ct. at 2552.

*Anderson* focuses more directly upon the test for determining whether a genuine issue of material fact exists. The Court defined materiality as follows:

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 248, 106 S.Ct. at 2510. The Court defined the existence of a genuine issue as follows:

**2.** The construction given by the federal courts to their rules does not control the interpretation of our state rules, even if the rules themselves are nearly identical. However, the experiences of those courts in applying rules similar to our own are illustrative, and we see no compelling reason to alter the federal standard.

**3.** Summary judgment is often looked upon as a primarily defensive motion. A party's posture as plaintiff or defendant, however, is not as significant to the procedure as is the question of which party bears the burden of proof. The principal, concurring, and dissenting opinions in *Celotex* are instructive as to the requirements

for a properly supported motion for summary judgment for a party plaintiff or defendant who does *not* bear the burden of proof. 477 U.S. 317, 106 S.Ct. 2548.

While we do not reach the issue here, summary judgment is also available to the party who bears the burden of proof. Interestingly, the first reported federal court decision concerning summary judgment authorized the trial court to enter judgment for the plaintiff in a contract action. W. Schwarzer, A. Hirsch & D. Barrans, *The Analysis and Decision of Summary Judgment Motions, A Monograph on Rule 56 of the Federal Rules of Civil Procedure.* 1991.

The Court has said that summary judgment should be granted where the evidence is such that it "would require a directed verdict for the moving party." *(Citation omitted.)* And we have noted that the "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *(Citation omitted.)* In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

477 U.S. at 251–2, 106 S.Ct. at 2512.

In 1987, we amended our *Rule 74.04* by removing paragraph (h), which prevented the trial court from granting summary judgment "unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." This amendment, along with the *Celotex* and *Anderson* decisions from the Supreme Court, have led our court of appeals to a more useful interpretation of *Rule 74.04*. *See, e.g., Rogers v. Illinois Cent. R.R.*, 833 S.W.2d 426 (Mo.App.1992); *American Family Mut. Ins. Co. v. Lacy*, 825 S.W.2d 306 (Mo.App.1991); *Wilson v. Altruk Freight Systems, Inc.*, 820 S.W.2d 717 (Mo. App.1991); *Wood & Huston Bank v. Malan*, 815 S.W.2d 454 (Mo.App.1991).

■ The court of appeals has stated that to overcome a properly made motion for summary judgment, the opposing party must demonstrate the existence of a factual question that would permit a reasonable jury to return a verdict for the opposing party. *Malan*, 815 S.W.2d at 457. A factual question exists if evidentiary issues are actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance. *Rogers*, 833 S.W.2d at 427. A mo-

tion for summary judgment need no longer rest on unassailable proof, nor is it precluded by "the slightest doubt resting on a scintilla of evidence". *Wilson*, 820 S.W.2d at 720; *Malan*, 815 S.W.2d at 457. Mere doubt and speculation do not create a genuine issue of material fact. *Wilson*, 820 S.W.2d at 720.

We agree. It is foolish to have a procedural rule with a standard that is not attainable. If a party bearing the burden of proof is unable to make a showing that facts exist to support submission of the issue to the jury, full or partial summary judgment is appropriate. While summary judgment does not allow a court to distinguish between a good case and a bad case, it does allow the court to avoid the expense of trial when there is *no* case. As Senior Judge Nugent properly noted, our trial courts should employ a "common sense approach to a determination of the availability of summary judgment". *Malan*, 815 S.W.2d at 457.

**B.**

In the present case, the School's motion for summary judgment is supported by an affidavit of Father Thomas Carolan and certain admissions contained in the deposition of Irene Martin. While plaintiffs opposed the motion, they did not come forward with any factual material to controvert the affidavits or the deposition statements. For the most part, plaintiffs merely argued that the School was not entitled to judgment as a matter of law.

■ A party confronted by a properly supported motion for summary judgment, however, may not rest upon mere allegations or denials in his or her pleadings. Instead, the party must, by affidavits or otherwise, "set forth specific facts showing that there is a genuine issue for trial." *Rule 74.04(e); St. Charles Cty. v. Dardenne Realty Co.*, 771 S.W.2d 828, 830 (Mo. banc 1989). Plaintiffs did not do so in the case at bar. Their failure to file any counteraffidavit or present any proof to the contrary obliges the Court to accept as true, for purposes of this review, that there is no factual issue as to the materials at-

tached to the motion for summary judgment. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 243 (Mo. banc 1984); *E.O. Dorsch Elec. Co. v. Plaza Constr. Co.*, 413 S.W.2d 167, 170 (Mo.1967).

Plaintiffs did claim that there remained genuine issues of fact regarding the nature of the School's duty to Irene and whether or not that duty was breached. Specifically, plaintiffs argued that the contract between the School and the City demonstrates that the School was a tenant of the ballfield and bleachers, and that it owed a duty of care to those it invited on the premises. For its part, the School argued that Irene was a mere licensee and that the School had no possessory interest in the facilities, thus it owed no duty of care at all to others on the premises.

■■■■ In any action for negligence, the plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury. *Krause*, 787 S.W.2d at 710. Although the parties' briefs concentrate on the existence and the extent of the School's duty to Irene, this case actually turns on the element of causation. The simplest test for proximate cause is whether the facts show that the injury would not have occurred in the absence of the negligent act. *Dintelman v. McHalffey*, 435 S.W.2d 633, 636 (Mo.1968).

■■■■ In spite of the School's contention to the contrary, Irene's status on the fateful night was clearly that of an invitee.[4] "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Restatement (Second) of Torts* § 332 (1965). Irene's status as a public invitee "is grounded upon her purpose in visiting the [land] and

whether that purpose is consistent with the nature of the business conducted there." *Roberts v. Menorah Medical Center*, 777 S.W.2d 330, 332 (Mo.App.1989). The School does not dispute that Irene's presence in the bleachers was connected with the purpose for which the football field was held open to the public.

■■■■ The duty owed by possessors of land[5] to invitees includes the duty to eliminate or warn of dangerous conditions of which the defendant knows or in the exercise of reasonable care should have known. *Duren v. Kunkel*, 814 S.W.2d 935, 938 (Mo. banc 1991). It also includes the duty to inspect the premises to discover possible dangerous conditions not known to the occupier. *Cox v. J.C. Penney Co., Inc.*, 741 S.W.2d 28, 29 (Mo. banc 1987).

■■■■ As previously stated, the affidavit of Father Thomas Carolan and portions of Irene's deposition were submitted by the School in support of its motion for summary judgment. Father Carolan was in charge of the School's administration when the accident occurred, and avers that the School contracted with the City to use the park for intermural games with other schools. He describes the park facilities as baseball diamonds converted to football fields and equipped with portable bleachers "of metal frame with wood plank construction."

Father Carolan asserts that, to his knowledge, the School "had never been informed of any defect or unsafe condition in the bleachers." He further states that the School did not undertake any responsibility for providing maintenance, permanent security, or other custodial services to the facilities, that the bleachers were owned and maintained by the City, and that the School had no authority to repair the bleachers. These assertions stand admitted because of plaintiffs' failure to contro-

---

4. Missouri law has long recognized that the patrons of places of public amusement are invitees. *See Berberet v. Electric Park Amusement Co.*, 319 Mo. 275, 3 S.W.2d 1025, 1029 (1928).

5. A possessor may be "a person who is entitled to immediate occupation of the land." *Restatement (Second) of Torts* § 328E. As discussed

below, the School contracted to use the City's park facilities to hold intermural football games. Thus, the School was a possessor because it was entitled to immediate occupation of the ballfield at least for the duration of each game.

vert them. *Zafft*, 676 S.W.2d at 243. Thus, the scope of the School's duty to Irene, at least in the context of the summary judgment motion, is defined and circumscribed by plaintiffs' admission of these factual allegations, which limit the School as a matter of law to a duty to conduct a reasonable pregame inspection of the bleachers and to warn spectators of any apparent hazards.[6]

Father Carolan's affidavit does not address whether the School ever inspected the bleachers. Thus, the record does not establish whether or not the School *breached* its duty to inspect and warn. However, Irene's deposition testimony moots the breach issue, by making it impossible for plaintiffs to show that any possible breach by the School *caused* the accident.

In her deposition, Irene admitted that although she had sat on the bleachers in question many times, she had never noted anything unusual about them other than chipped paint, and here and there "a splinter out of a board or a slab off at the end of a board," but "they always were standing."[7] On the night in question, the stands "were heavily loaded but I've been to games before when they were just as loaded."[8] After she had been sitting for approximately an hour, Irene stood up to watch an important play and heard "a loud crack and just immediately after that I just—like dropping through a trap door, I was gone." She "didn't have any indication" that the board was about to crack.[9] She heard no comments prior to the accident indicating that the bleachers were in poor shape.[10]

Most importantly, when asked whether she knew of any fact which should have led the City or the School to have known of the likelihood of that board breaking, Irene answered, "Not that I know of."[11] She also indicated that there was nothing she or anybody else would have been able to notice about the board that would have led one to believe it was subject to breaking.[12]

Irene's forthright statements leave no room for reasonable disagreement as to their significance. By her own admission, the allegedly hazardous condition of the bleachers could not have been discovered by ordinary inspection prior to the game. The only reasonable inference is that the School would not have issued a warning even if it had inspected the bleachers. A failure to inspect cannot be the proximate cause of an accident if no warning would have been forthcoming had the inspection been performed.

Moreover, plaintiffs did not come forward with any subsequently developed evidence that might have proven that the hazardous condition could have been discovered before the game. The broken board was not saved, no picture of it was taken, and no expert examined it or the bleachers.[13] There was simply no source from which plaintiffs might reasonably be able to develop the necessary evidence to make a submissible case. Plaintiffs have not and cannot adduce any facts that would lead a reasonable trier of fact to believe that, but for the School's negligence, Irene could have avoided her injuries. Accordingly, we must conclude that no factual issue remains and that the School has shown it is entitled to judgment as a matter of law.

---

6. It must be emphasized that the definition of the School's duty arrived at in this particular case, for purposes of summary judgment, is not meant to limit or modify the duty of occupiers of land toward invitees in general. In fact, the limited scope of the School's duty toward Irene does not necessarily shelter the City in this case. A proprietor who leases land to another for a purpose involving the admission of many persons as patrons of the lessee may be liable for injuries caused by artificial conditions that the proprietor was or should have been aware of. *Brown v. Reorganization Inv. Co.*, 350 Mo. 407, 166 S.W.2d 476, 480 (1942).

7. Irene's deposition, L.F. Exhibit A pp. 8–9, 36.

8. *Id.* at 42.

9. *Id.* at 10.

10. *Id.* at 37, 44.

11. *Id.* at 48–9.

12. *Id.* at 36.

13. *Id.* at 37, 61, 44.

### C.

Plaintiffs next contend that their claim of negligence by res ipsa loquitur was not controverted by affidavit. Their contention fails for the same reason as does their ordinary negligence claim.

 Res ipsa loquitur is a rule of evidence that permits the jury to infer negligence without direct proof. *Frazier v. Ford Motor Co.*, 365 Mo. 62, 276 S.W.2d 95, 98 (banc 1955). The doctrine supplies circumstantial evidence of a breach when the plaintiff lacks the facts to plead the specific negligent conduct that constituted the breach. In effect, res ipsa loquitur carries the plaintiff over the breach hurdle. It cannot, however, leap over the causation hurdle.

The presence of two defendants does not preclude the use of res ipsa loquitur, so long as on the facts of the case "the jury could reasonably find that either or both of the defendants were in control of the [instrumentality], so as to make the application of res ipsa loquitur proper." *Bass v. Nooney Co.*, 646 S.W.2d 765, 768 (Mo. banc 1983). Father Carolan's affidavit asserts that the School did not undertake any responsibility to provide maintenance and had no authority to make alterations or repairs to the bleachers. Because plaintiffs did not controvert these statements, we must conclude for purposes of this review that the School's control over the bleachers was limited (1) in time, to the duration of each contractual occupation of the playing field, and (2) in scope, to those activities incidental to the School's sponsorship of the football games. *Zafft*, 676 S.W.2d at 243; *Dorsch Elec.*, 413 S.W.2d at 170.

During these periods of actual control, the School's obligations were reduced (again by plaintiffs' admissions, as discussed above) to a duty to inspect for apparent defects and to warn the spectators. We have already concluded that, given the limited extent of the School's duty for purposes of the summary judgment motion, the materials filed with the motion preclude a finding that any breach by the School was the proximate cause of Irene's injuries.

As to any other time periods, plaintiffs cannot establish the requisite element of control. Accordingly, plaintiffs have failed to make a submissible case of negligence under res ipsa loquitur.

Finally, plaintiffs contend that a fact issue remained as to whether the agreement between the City and the School constituted a joint venture that would render the School responsible for the City's negligence. However, "The existence of a different type of express contract is in itself inconsistent with a claimed relationship of a joint venture by implication." *Jeff–Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 16 (Mo.1970).

Father Carolan's affidavit states that the School "arranged to use" and "frequently contracted with the City to use" the City's athletic facilities. Plaintiffs' failure to counter these statements constitutes an admission, for purposes of this review, that the School's use of the City's sport facilities was governed by an express contractual relationship. *Dorsch Elec.*, 413 S.W.2d at 170. This admission and plaintiffs' failure to submit any evidence to indicate factual support for their position resolve all issues of fact connected with the joint venture allegation, and preclude any potential liability of the School for the City's negligent acts.

### D.

In consideration of the foregoing, we find no error in the trial court's grant of summary judgment in favor of the High School. The summary judgment is affirmed.

All concur.