

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| MICHAEL E. CONNER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. SD33342 |
| | ) | Filed: September 19, 2016 |
| DALE OGLETREE | ) | |
| and SCOTT KIDWELL, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

APPEAL FROM THE CIRCUIT COURT OF WRIGHT COUNTY

Honorable R. Craig Carter, Circuit Judge

**<u>AFFIRMED</u>**

This case involves a 2007 workplace accident in which Plaintiff Michael Conner (Conner) was rendered a quadriplegic. Conner filed a personal injury action against two co-employees, Dale Ogletree and Scott Kidwell (hereinafter referred to individually as Ogletree and Kidwell, and collectively as Defendants). The trial court entered judgment in favor of Defendants on their motions for summary judgment. Because Conner failed to establish that Defendants owed him a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace, we affirm the trial court's grant of summary judgment. Our disposition follows recent decisions by our Supreme Court clarifying co-

employee liability under the common law from 2005 until 2012 in ***Parr v. Breeden***, 489 S.W.3d 774 (Mo. banc 2016), and ***Peters v. Wady Indus., Inc.***, 489 S.W.3d 784 (Mo. banc 2016).

## Standard of Review

Summary judgment is proper when the moving party demonstrates there is no genuine dispute about material facts and, under the undisputed facts, the moving party is entitled to judgment as a matter of law.  Rule 74.04(c)(6); ***ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 380 (Mo. banc 1993).  A defending party can demonstrate entitlement to summary judgment by showing:  (1) facts negating any of the claimant's necessary elements; (2) the claimant, after an adequate period of discovery, has been unable, and will not be able, to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) the undisputed facts support each of the necessary elements of the defending party's properly pleaded affirmative defense.  ***ITT Commercial***, 854 S.W.2d at 381.  When considering an appeal from a summary judgment, we review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences.  ***Id***. at 376.  Because the propriety of summary judgment is purely an issue of law, we review the grant of a summary judgment *de novo.*  ***Id***.; *see* ***Parr***, 489 S.W.3d at 778.

## Factual and Procedural Background

In December 2007, Conner and Defendants were employed by Intercounty Electric Cooperative Association (Intercounty).  Conner was employed as a journeyman lineman and had been with Intercounty since January 2001.  Ogletree was also a journeyman

2

lineman and employed as a crew supervisor. Kidwell was employed as a service lineman. It is undisputed that Conner and Defendants were all working in the course and scope of their employment the day of the accident.

On December 7, 2007, the job that afternoon was to retire a transformer bank and remove power lines near an old shoe factory. Ogletree and Kidwell were among the first to arrive at the job site. In an effort to de-energize the lines, Kidwell "opened the switches" from the ground with an "extendo stick."[1] Kidwell then told Ogletree that the power was disconnected. Ogletree was sitting on top of an elevated transformer platform at the time, with his back in close proximity to an energized line. When Conner joined Ogletree on the platform, Conner asked Ogletree if the power had been cut, and Ogletree responded that it had. Conner then reached up with a wire-cutting tool in his hand and attempted to cut a line that was not de-energized. The electric shock knocked Conner off of the platform. He landed on his neck, causing severe injuries that rendered him a quadriplegic. Conner admitted that Kidwell did not purposefully cause the accident.

In December 2012, Conner filed his first amended petition naming Ogletree and Kidwell as defendants. Conner's petition included a total of five counts. The first three counts alleged negligence by Ogletree, and the remaining two counts alleged negligence by Kidwell.

---

[1] According to Conner, switches that cut power are "knife blade switches" and the switches that Kidwell opened "were not knife blade switches but by-pass switches. While a knife blade switch cuts all the power down the line, a by-pass switch cuts the power at the switch's location but lets the power keep flowing down the line. By-pass switches are old fashioned and out-of-date. The difference between the two is subtle but it can be seen from 15 feet away." Conner maintains that by using the "extendo stick" and not the bucket truck, Kidwell was too far away to properly see the switches, which were "at least 25 feet off the ground." (Transcript references omitted.)

3

With respect to the first three counts against Ogletree, Count 1 was captioned "Affirmative Negligence." That count alleged Ogletree breached a personal duty of care and was affirmatively negligent in the following ways:

a. … Ogletree directed [Conner] to perform work on an energized power line system after [Conner] was wrongfully made to believe that such system had been properly tested for voltage, grounded and in effect de-energized;

b. [Ogletree] negligently failed to make sure that the "high voltage/primary line" was tested for voltage, grounded and de-energized before he directed [Conner] to perform work on the power line system;

c. … Ogletree negligently failed to warn [Conner] of the dangerous condition of the power line system, and [Conner] was instead made to believe that the [line] had been de-energized, and; [Ogletree] failed to direct the workers of his crew to ground the high voltage line/primary line;

d. … Ogletree negligently failed to supervise the work of his linemen including among other things, failed to conduct a "tailgate briefing" at the job site to give directions and supervision to the members of his crew and;

e. That sub-paragraphs [a-e] constitute failure to follow the safety rules and relative safety standards as set forth in Missouri Law, the National Electrical Code, and the National Electrical Safety Code.

Count 2 was captioned "Assumption of a Duty Pursuant to Restatement (Second) of Torts § 324a (1965)" and alleged that Ogletree assumed a duty to exercise ordinary care to protect Conner against injury in the performance of his work. Count 3 was captioned "Negligence" and alleged that "Ogletree owed a personal duty to [Conner] to exercise such care in the prosecution of his work as men of ordinary prudence use in like circumstances." This count alleged that failure to hold a tailgate meeting, test for voltage, ground the line, and warn Conner that the line was not de-energized also were violations of Intercounty's safety rules.

4

The two counts against Kidwell were similarly captioned as "Affirmative Negligence" and "Negligence." In Count 4, Conner alleged Kidwell was affirmatively negligent in the following ways:

a. … Kidwell negligently inspected the subject "high voltage power/primary energy line" and failed to properly identify [the] dangerous and/or hazardous condition of the power line system and failed to de-energize the "high side line/primary line";

b. … Kidwell knowingly allowed [Conner] to perform work on an energized power line system after [Conner] was wrongfully made to believe that such system had been properly tested for voltage, grounded and in effect de-energized;

c. … Kidwell negligently failed to make sure the high line/primary line was tested for voltage, grounded and de-energized before [Conner] began to start work on the power line system;

d. … Kidwell negligently failed to warn [Conner] of the dangerous condition of the power line system and [Conner] was instead made to believe that the "high voltage line/primary line" had been de-energized; and

e. That sub-paragraphs 42 [a-d] all show failure to comply with all safety rules and safety standards as set forth in Missouri law, the National Electrical Code, and the National Electrical Safety Code.

Count 5 was a general negligence count against Kidwell which alleged that he "owed a personal duty to [Conner] to exercise such care in the prosecution of his work as men of ordinary prudence use in like circumstances." This count likewise alleged that failure to test for voltage, ground the line, and warn Conner that the line was not de-energized were violations of Intercounty's safety rules.

In response, Defendants pled several affirmative defenses. These included defenses that: (1) Conner's claims all related to the employer's nondelegable duty to provide a safe workplace; (2) the claims were barred by the exclusivity provision of the worker's

5

compensation law; and (3) Defendants did not engage in any intentional activity that would constitute something more or an affirmative negligent act.

After the parties engaged in discovery, Defendants filed separate motions for summary judgment. The trial court initially granted summary judgment on three of the five counts; Counts 2 and 3 in favor of Ogletree, and Count 5 in favor of Kidwell.[2] Summary judgment was denied as to Counts 1 and 4 because discovery was still ongoing. After Conner had the opportunity to conduct additional discovery, summary judgment was granted to those remaining two counts; Count 1 in favor of Ogletree, and Count 4 in favor of Kidwell.[3] The court also denied Conner's motion to compel Intercounty to produce copies of its accident report. This appeal followed. Additional facts will be included below as we address Conner's three points on appeal.

---

[2] The court reasoned that Conner cannot prevail on these counts sounding in negligence because "something more" is required in co-employee liability cases.

[3] The court explained:

Counts [1 and 4] of this pleading are described as "something more" causes of action. However, the Court notes only one allegation contained within the entire Petition that would, if proven, be submissible to a jury as a "something more" case. This allegation is contained in paragraph 42.b., wherein plaintiff alleges:

"Defendant Kidwell knowingly allowed Plaintiff Michael Conner to perform work on an energized power line system after Mr. Conner was wrongfully made to believe that such system had been properly tested for voltage, grounded and in effect de-energized." The court has thoroughly reviewed the exhibits proffered by the parties, and finds that all of the evidence disproves this allegation. Even Plaintiff's expert testified that there was no purposeful or knowing act or omissions by any Defendant.

6

**Discussion and Decision**

In *Parr* and *Peters*, our Supreme Court clarified that "[t]o maintain a negligence action against a co-employee, a plaintiff must show that the co-employee breached a duty separate and distinct from the employer's nondelegable duty to provide a safe workspace for all employees." *Parr*, 489 S.W.3d at 782; *Peters*, 489 S.W.3d at 794. In other words, "employees are liable at common law to third persons, including other co-employees, for breaching a legal duty owed independently of any master-servant relationship." *Peters*, 489 S.W.3d at 794-95. "The existence of a duty is purely a question of law." *Parr*, 489 S.W.3d at 779; *Peters*, 489 S.W.3d at 793-94.[4]

Conner's points on appeal contend that the trial court erred by: (1) granting summary judgment on Counts 3 and 5 "in that co-employees are liable for actions sounding in negligence from 2005 until 2012"; (2) refusing to compel discovery of the accident report; and (3) granting summary judgment on Counts 1 and 4 "in that the 'something more' standard describes affirmative acts[.]"[5] Because Conner's first and third points each involve the question of whether Defendants owed Conner a duty and that issue is dispositive of this appeal, the arguments in these two points will be considered together. *See, e.g.*, *Parr*, 489 S.W.3d at 780. Because the allegations against Kidwell and Ogletree are different, we will discuss each of the defendants separately.

---

[4] As with any action for negligence, once a plaintiff establishes that the defendant owed a duty to plaintiff, the plaintiff must then prove that "the defendant failed to perform that duty [and] defendant's breach was the proximate cause of the plaintiff's injury." *Martin v. City of Washington*, 848 S.W.2d 487, 493 (Mo. banc 1993); *Parr*, 489 S.W.3d at 780.

[5] Conner does not challenge the trial court's grant of summary judgment as to Count 2 against Ogletree.

*Kidwell*

Conner contends the trial court erred in granting summary judgment in favor of Kidwell because Kidwell: (1) "failed to see, know or be familiar with the switch"; (2) "failed to test the system"; (3) "failed to ground the system"; (4) "omitted telling [Ogletree] he couldn't recognize a bypass switch"; (5) affirmatively "pulled a switch not knowing what it would do"; and (6) affirmatively "told [Ogletree] the system was de-energized[.]" Conner argues that because Kidwell "was negligent in carrying out the details of his work," Conner's injuries are attributable to Kidwell's breach of a duty separate and distinct from the employer's nondelegable duty. We disagree.

"Under Missouri law, it is well established that an employer owes certain nondelegable duties to its employees with respect to safety and that, even if an employer assigns the performance of those duties to an employee, the employer remains liable for any breach of such duties." *Peters*, 489 S.W.3d at 795. An employer's nondelegable duties are continuing in nature and include the following specific duties:

1. The duty to provide a safe place to work.

2. The duty to provide safe appliances, tools, and equipment for work.

3. The duty to give warning of dangers of which the employee might reasonably be expected to remain in ignorance.

4. The duty to provide a sufficient number of suitable fellow servants.

5. The duty to promulgate and enforce rules for the conduct of employees which would make the work safe.

8

*Id*. (quoting W. Keeton, Prosser and Keeton on the Law of Torts, § 80 at 569 (5th ed. 1984)); *Parr*, 489 S.W.3d at 779.[6]  Thus, with respect to an employer's nondelegable duties to provide a safe workplace, if a co-employee is assigned to perform such duties, it is solely by virtue of the master-servant relationship. *Peters*, 489 S.W.3d at 795. "*Absent the master-servant relationship*, a co-employee would have no duty to perform an employer's nondelegable duties." *Id*. (emphasis added).

With these principles in mind, we conclude Conner failed to establish, as a matter of law, that Kidwell owed him a duty independent of the master-servant relationship. *Id*. at 794-95.  Stated another way, absent Kidwell's employment relationship with Intercounty, Kidwell would owe no duty to Conner, for example, "to see, know or be familiar with the switch" or "to test [or] ground the system" or "to warn" or "to comply with all safety rules" required by Intercounty or the National Electrical Safety Code. *See id*.; *see also Parr*, 489 S.W.3d at 781 (the duty to follow and enforce safety regulations "results from the master-servant relationship and would be part of the employer's nondelegable duty to follow and enforce rules of conduct designed to keep employees safe").  In our view, every allegation against Kidwell was a failure to perform his employer's nondelegable duty to provide a safe workplace.  As such, "when an employee fails to perform the employer's nondelegable duty, the failure rests with the employer, not the employee." *Carman v. Wieland*, 406 S.W.3d 70, 76-77 (Mo. App. 2013); *see Parr*, 489 S.W.3d 779.

---

[6]  In addition, the scope of the employer's duty to provide a safe workplace is "dependent on several factors, including the nature of the employer's work and the risks associated with the work." *Peters*, 489 S.W.3d at 795.

Conner nevertheless argues that Kidwell is liable for Conner's injuries by relying on language in *Peters*, that when "the employee's injuries result from a *co-employee's negligence in carrying out the details of the work*, the injuries are attributable to the co-employee's breach of a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace." *Peters*, 489 S.W.3d at 796 (emphasis added). The *Peters* court clarified, however, such liability of a co-employee is limited and includes "instances in which injury results from *transitory risks* created by the co-employee's negligence in carrying out the details of his or her work." *Id*. (emphasis added). The Court gave an example of such a risk in *Marshall v. Kansas City*, 296 S.W.2d 1 (Mo. 1956), in which the plaintiff was injured when his co-employee shook a compressor hose to remove the kinks and caused the plaintiff to trip. *Id*. at 2. Because the co-employee created a "transitory risk" with the hose, the plaintiff's injuries resulted from the co-employee's negligence and not the employer's breach of its nondelegable duty to provide a safe workplace. *Id*. at 3; *Peters*, 489 S.W.3d at 796. Here, Conner does not and cannot argue that Kidwell created a "transitory risk" or any risk not already present and known with respect to electrical power lines.[7] For this reason, his argument that Kidwell is liable because he "was negligent in carrying out the details of his work" has no application here. Thus, Conner has failed to

---

[7] "Electricity is one of the most dangerous agencies ever discovered by human science[.]" *Geismann v. Missouri Edison Elec. Co.*, 73 S.W. 654, 659 (Mo. 1903); *Chavez v. Cedar Fair, LP*, 450 S.W.3d 291, 296 (Mo. banc 2014); *see, e.g.*, *Logan v. Sho-Me Power Elec. Co-op.*, 122 S.W.3d 670, 678 (Mo. App. 2003) (plaintiffs' allegations that co-employee "created" dangerous conditions "beyond the usual requirements of employment" are wholly refuted by plaintiffs' admissions that project fully contemplated work upon energized lines), *abrogated on other grounds by Burns v. Smith*, 214 S.W.3d 335 (Mo. banc 2007).

establish that Kidwell breached a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace.

*Ogletree*

Conner contends the trial court erred in granting summary judgment in favor of Ogletree because "Ogletree, having no idea of the limitations or general knowledge possessed by Kidwell": (1) "allowed Kidwell to 'clear' the system"; (2) "knew Kidwell had only taken a pole to open the switch"; (3) "knew Kidwell did not have a way to see the elevated switch, a testing device or way to ground the elevated lines"; (4) knew "Kidwell had not taken the necessary equipment to inspect the switch, test for voltage or ground the transmission lines"; (5) "accepted his word the system was de-energized"; and (6) "when asked by the late arriving [Conner] for clearance, affirmatively told [him] the system was dead." Conner argues that because Ogletree "failed to properly supervise, undertook and created the personal duty to Conner by telling him the line was de-energized such that Conner did not take the necessary precautions," Conner's injuries are attributable to Ogletree's breach of a duty separate and distinct from the employer's nondelegable duty. We disagree.

In *Peters*, an argument based on similar allegations was made against the supervisor, Mr. Terrio. *Peters*, 489 S.W.3d at 787-88. While recognizing that "the employer's nondelegable duty to provide a safe workplace does not include transitory risks arising from an employee's negligence in carrying out his or her work[,]" the Court rejected plaintiffs' argument against Mr. Terrio explaining:

> [T]he pleadings do not support the Peterses' assertion on appeal that this is a situation in which an unsafe work environment resulted from Mr. Terrio negligently carrying out the details of his work. Rather, the allegations pertain to Mr. Terrio, in his supervisory role as project manager,

11

> negligently carrying out [employer's] nondelegable duty to provide a safe workplace.

*Id*. at 799. We reach the same conclusion here. Every allegation against Ogletree pertains to him in his supervisory role in allegedly negligently carrying out Intercounty's nondelegable duty to provide a safe workplace. *See id*. Therefore, Conner has similarly failed to establish that Ogletree breached a duty separate and distinct from his employer's nondelegable duty to provide a safe workplace.

Because the allegations in Conner's petition fail to plead a breach by either Kidwell or Ogletree of a duty owed to Conner separate and distinct from the employer's nondelegable duty to provide a safe workplace, the trial court did not err by entering summary judgment in favor of Defendants. *See Parr*, 489 S.W.3d at 782; *Peters*, 489 S.W.3d at 800. Points 1 and 3 are denied. Our disposition of these points renders moot the discovery issue asserted in Point 2.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCUR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

12